IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOUTHERN ELECTRIC COIL, LLC, and Indiana limited liability company, and CLAIRE NARDONI,<br><br>     Plaintiffs,<br><br> v.<br><br>FIRSTMERIT BANK, N.A. f/k/a/ MIDWEST BANK & TRUST COMPANY, or as successor to MIDWEST BANK & TRUST COMPANY, and d/b/a/ MIDWEST BANK, BERNARDI SECURITIES, INC., PERSHING, LLC, and PNC FINANCIAL SERVICES GROUP, INC.<br>     Defendants. | Case No. 11 C 6135<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Defendant FirstMerit Bank, N.A., as successor in interest to Midwest Bank & Trust Company ("FirstMerit"), moves the Court to withdraw the reference of this adversary proceeding from the United States Bankruptcy Court for the Northern District of Illinois pursuant to 28 U.S.C. § 157(d). In response, Plaintiff Southern Electric Coil, LLC (the "Debtor"), opposes withdrawal and requests that the Court remand the case to the Bankruptcy Court. For the following reasons, the Court denies FirstMerit's motion to withdraw reference.

**BACKGROUND**

On August 11, 2011, the Debtor filed a voluntary petition for Chapter 11 bankruptcy in the Bankruptcy Court for the Northern District of Illinois, Case No. 11 B 32840. Prior to filing, on July 26, 2011, the Debtor and Claire Nardoni ("Nardoni") filed a two-count verified complaint for

declaratory judgment and injunctive relief against FirstMerit and other financial services firms in the Circuit Court of Cook County—Chancery Division, Case No. 11 CH 26133. Nardoni owns two securities accounts at Bernardi and at PNC Bank, N.A., collectively in excess of two million dollars (the "Securities Accounts"), as a joint tenant with rights of survivorship after her husband's death. (Doc. 1, ¶2; Doc. 1 Ex. A, ¶21). Her husband was a partial owner of the Debtor, and those securities were pledged as secured collateral for FirstMerit's loans to the Debtor according to a final August 2009 Agreement (the "Agreement") providing that the pledge of the Securities Accounts was terminated, and additional collateral may be demanded from the Debtor who "has no interest in the assets held" in the Securities Accounts. (Doc. 1 Ex. A, ¶¶18-20). The loans were guaranteed by Nardoni's husband in favor of FirstMerit. When FirstMerit's loans to the Debtor, as well as to Nardoni's husband individually, became due and payable in full without further notice or demand, and remained unpaid, and Nardoni's husband's death constituted an additional event of default, FirstMerit sought to liquidate the Securities Accounts and apply the proceeds to satisfy any of the Nardonis' outstanding loans in any manner that it chooses. (Doc. 1, ¶¶12-13, 17).

In Count I of the complaint, Nardoni states that she would be irreparably harmed if FirstMerit liquidates the Securities Accounts and that FirstMerit has released its secured position in the Securities Accounts and has no right to them. (Doc. 1 Ex. A, ¶¶25-27). In Count II, the Debtor argues that the Agreement limits FirstMerit's application of proceeds from collateral (regardless of the source) to the Debtor's obligations and that FirstMerit's attempt to recuperate the Securities Accounts would irreparably harm Nardoni and itself. (Doc. 1 Ex. A, ¶25-29).

Because the Debtor is a debtor-in-possession pursuant to 11 U.S.C. § 1101(1), it must commence and prosecute claims and causes of action for the benefit of its bankruptcy estate and creditors.[1] *See also* 11 U.S.C. § 1107(a) (investing the debtor in possession with the rights and powers of a trustee acting under Chapter 11). The underlying claim, therefore, seeks to prevent FirstMerit's liquidation of the Securities Accounts and prevent FirstMerit from applying the proposed liquidated proceeds of the Securities Accounts to obligations other than those of the Debtor.

On August 17, 2011, the Debtor filed a notice of removal removing the state court lawsuit to the Bankruptcy Court for the Northern District of Illinois, Case No, 11 A 1746, (the "Adversary Case"), arguing that the proceeding would affect the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the debtor-equity security holder relationship, pursuant to 28 U.S.C. § 157(b)(2)(O). On September 2, 2011, FirstMerit filed a motion seeking to withdraw the reference of the present Adversary Case from the Bankruptcy Court to the District Court, stating that the Bankruptcy Court does not have jurisdiction and requesting that this District Court adjudicate the issues raised in the underlying Adversary Case "for cause shown" pursuant to 28 U.S.C. § 157(d).

**LEGAL STANDARD**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. §§1408 and 1409. Bankruptcy cases are automatically referred to

---

[1] The Debtor states in its motion in opposition to withdrawal of the reference that the Debtor withdraws its consent to act as co-Plaintiff as to Count I of the complaint in the State Court Lawsuit. (Doc. 10, p. 3 n. 1).

3

bankruptcy judges for the same federal district pursuant to 28 U.S.C. §157(a). *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 951 (7th Cir. 1996). A bankruptcy court may hear "core" proceedings and enter final judgment pursuant 28 U.S.C. § 157(b)(1)-(2). In contrast, proceedings that are only "otherwise related to a case under title 11" (also called "non-core") are those that a bankruptcy court may hear but only submit proposed findings of facts and conclusions of law to the district court. See 28 U.S.C. § 157(c)(1). The district court would then review *de novo* those findings to which a party objects and enter final judgment. *Id.* Section 157 lists sixteen proceedings that are considered core, including "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(O).

Pursuant to 28 U.S.C. § 157(d), the "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown." This has been interpreted as allowing courts to grant permissive withdrawal "for cause shown" by a movant. *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir.1996). "Demonstration of "cause" is not an easy burden, and courts have held that Congress intended for bankruptcy judges to determine complex Title 11 issues to the greatest extent possible." *In re Alpern*, 191 B.R. 107, 110 (N.D. Ill. 1995) (citations omitted). The Court considers the following factors when determining whether the movant has met its burden in establishing that cause for withdrawal exists: (i) whether the proceeding is core or non-core, (ii) considerations of judicial economy and convenience, (iii) promoting the uniformity and efficiency of bankruptcy administration, (iv) forum shopping and confusion, (v) conservation of debtor and creditor

resources, and (vi) whether the parties requested a jury trial. *In re Beale*, 410 B.R. 613, 616 (N.D.Ill.2009) (citation omitted)). "While the court evaluates each of the cited factors, it is axiomatic that the most important factor is whether the claim is core or non-core because it is on this issue that questions of efficiency and uniformity will turn." *Equipment Acquisition Resources, Inc. v. U.S. IRS*, 2010 WL 3273060 at *2 (N.D.Ill. Aug 13, 2010) (citing *In re Neumann Homes, Inc.*, 414 B.R. 383, 386 (N.D.Ill.2009)).

**ANALYSIS**

FirstMerit argues that cause exists for permissive withdrawal of the reference because the Bankruptcy Court lacks jurisdiction over the claims made by the Debtor and Nardoni in the Adversary Case. Specifically, FirstMerit argues that the claims are not "core proceedings" but instead are at most only "otherwise related to a case under title 11." In response, the Debtor argues that the claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(O) because the liquidation of the Securities Accounts would materially affect the assets available to the Debtor's estate and the ability of the Debtor under a plan of reorganization to provide repayment to its creditors in addition to FirstMerit and would alter the relationship between the Debtor and FirstMerit by applying certain proceeds to FirstMerit in satisfaction of its pre-petition debts. Further, the Debtor argues that even if the proceeding is non-core and merely "related to" its bankruptcy proceeding, the Bankruptcy Court is not precluded from hearing the Adversary Case.

As to whether the underlying claim falls within 28 U.S.C. § 157(b)(2)(O), the Debtor asserts that the "Adversary Case directly affects the Debtor and the Debtor Estate's ability to propose an

effective Plan of Reorganization in the Bankruptcy Case." (Doc. 10, p. 10). In contrast, FirstMerit replies that the outcome of Count I does not "ha[ve] any effect on [the Debtor] or its bankruptcy estate" and that even if the Debtor "is successful in Count II, that determination will not affect the amount of property in [the Debtor]'s bankruptcy estate." (Doc. 12, p. 4, 5). Because the parties dispute whether the Debtor maintains an equitable interest in the Securities Account, this Court must reiterate that whether and how the Debtor's estate will be affected by the resolution of the Adverse Case is precisely the sort of fact-finding and analysis that this Court seeks from a bankruptcy court in reaching its decisions. *See Business Communications, Inc. v. Freeman*, 129 B.R. 165 (N.D.Ill. 1991) (even when assuming that parties had correctly characterized bankruptcy proceeding as non-core jury matter and that bankruptcy court was not authorized to conduct jury trial, withdrawal of reference from bankruptcy court to district court was still not warranted); *see also In re Edgewater Medical Center*, 2004 WL 2921957 N.D.Ill (2004) (accord).

The parties also dispute the import of the holding in the Supreme Court's recent decision in *Stern v. Marshall* on whether the Bankruptcy Court may even conduct fact-finding. ___ U.S. ___, 131 S. Ct. 2594, 180 L. Ed.2d 475 (2011). The *Stern* Court determined that the Bankruptcy Court had statutory authority to enter final judgment on a counterclaim of tortious interference pursuant to 28 U.S.C. § 157(b)(2)(C), which categorizes "counterclaims by the estate against persons filing claims against the estate" as core proceedings. 131 S.Ct. at 2605. However, the *Stern* Court went on to hold that the bankruptcy court in that case lacked constitutional authority to enter final judgment on the debtor's counterclaim. *Id.* at 2601. FirstMerit argues that *Stern*'s holding mandates that the present reference be withdrawn thereby precluding the Bankruptcy Court from

conducting fact-finding. The Court disagrees with such an overly broad application of the holding, because while the Supreme Court held at least part of the statutory scheme unconstitutional, it explicitly stated that "the question presented here is a 'narrow' one" applying only to certain claims. *Id.* at 2620. The *Stern* Court did not rule directly on the question of whether the part of the statutory scheme at issue here, § 157(b)(2)(O), was unconstitutional. *See* 28 U.S.C. § 157(b)(2)(O) ("proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims"). Further, the *Stern* Court, albeit in dicta, stated that its ruling did not preclude a bankruptcy court from hearing counterclaims and proposing findings of facts.[2] *Id.*

In addition, in *in re Canopy*, Judge Hibbler analyzed whether *Stern* renders unconstitutional § 157(b)(2)(H), which categorizes fraudulent conveyance actions as core proceedings, and ultimately declined to make such a finding: regardless of whether the fraudulent conveyance actions were core or non-core, a bankruptcy court could still hear the claims and propose findings of fact and conclusions of law to assist in his ruling. *In re Canopy Financial, Inc. v. American Express Company*, 2011 WL 3911082 N.D.Ill. (2011) ("The Court need not determine which of these interpretations is proper because they lead the Court to the same conclusion in this case."). Using

---

[2] "[T]he current bankruptcy system ... requires the district court to review *de novo* and enter final judgment on any matters that are "related to" the bankruptcy proceedings, and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof. [Respondent] has not argued that the bankruptcy courts are barred from "hearing" all counterclaims or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that finally decides them. We do not think the removal of counterclaims such as [Petitioner's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States [appearing as *amicus curiae*] that the question presented here is a "narrow" one." *Id.* at 2620 (internal quotations, citations, and brackets omitted).

the same logic, this Court declines to extend *Stern*'s constitutionality analysis to a different claim within § 157(b)(2) when the Bankruptcy Court is best poised to perform the analysis when the parties involved dispute the potential outcome's effect on the Debtor's estate. *See in re Gardner*, 913 F.2d 1515, 1518 (10th Cir. Kan. 1990) (finding that a bankruptcy court lacked related jurisdiction to enter final judgment to resolve controversies between third party creditors which do not involve the debtor or his property, unless the bankruptcy court could not complete its administrative duties without resolving the controversy) (relying on *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987)).

As to the remaining five factors in the six-factor test to determine whether this Court should withdraw the reference, FirstMerit fails to meet its burden. *See in re Beale*, 410 B.R. at 616 "[P]ermissive withdrawal is the exception, rather than the rule.") (quoting *in re Xonics*, 813 F.2d at 131). Considerations of judicial economy and convenience, as well as promoting the uniformity and efficiency of the Debtor's and FirstMerit's resources, weigh in favor of relying on the division of labor conferred on the Bankruptcy Court and upholding the reference. *See Equipment Acquisition Resources, Inc. v. U.S. IRS*, 2010 WL 3273060 (denying motion for permissive withdrawal of reference because efficiency would only potentially be served by consolidating three interrelated cases, despite movant's third-party complaint seeking restitution for fraudulent transfers being non-core). As to forum shopping and confusion, there seems to be confusion on FirstMerit's part as to how to proceed before this Court. In its motion, FirstMerit argues that the Adversary Case lacks even "arising under" jurisdiction, which would effectively leave no jurisdictional basis under §1334 for this Court to hear the Adversary Case, but fails to articulate why it would remain properly before this Court for adjudication. Only in its reply does FirstMerit differentiate between

8

jurisdiction over Count I and Count II separately, but fails to address the Debtor's new stance in its motion in opposition in which it withdraws its consent to act as co-Plaintiff as to Count I of the complaint in the State Court Lawsuit. (Doc. 10, p. 3 n. 1). Finally, FirstMerit states that it intends to file counterclaims for breach of contract against its co-defendants in the Adverse Case, Bernardi and PNC Bank, N.A., who maintained the Securities Accounts, for which FirstMerit will be entitled to a trial by jury. However, the potential counterclaims and eventual jury trial that might follow do not weigh heavily in FirstMerit's favor. *See Business Communications, Inc.*, 129 B.R. at 166 ("The appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready.") (citations omitted).

Because the Court concludes that withdrawal of the reference at this stage of the proceeding is not warranted, the Court, in its discretion, denies FirstMerit's motion to withdraw the reference without prejudice.

```
                                              _____
                                              Virginia M. Kendall
                                              United States District Court Judge
                                              Northern District of Illinois
```

Date: December 16, 2011

9